**Katherine E. DICKINSON, et al., Plaintiffs,**

v.

**Terrel BELL, Secretary of Education, Defendant.**

**Civ. A. No. 83–3649.**

United States District Court, District of Columbia.

Feb. 3, 1984.

J.E. McNeil, Washington, D.C., for plaintiffs.

Neil H. Koslowe, Leland Ware, U.S. Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM

GESELL, District Judge.

This is a suit challenging regulations promulgated by the Secretary of Education to implement Title IV of the Higher Education Act of 1965, 20 U.S.C. § 1070 *et seq.*, and § 1113 of the Department of Defense Authorization Act, 1983 (Defense Act), 50 U.S.C. app. § 462(f) (1982). Plaintiffs are three female students who have been denied federal financial assistance because of their refusal on grounds of conscience to sign a form mandated by the regulations. They argue that the regulations are not authorized by the statutes cited above, are arbitrary and capricious, and violate plaintiffs' rights under the Free Speech Clause of the First Amendment and the Equal Protection Clause of the Fifth Amendment.

The matter is before the Court after full hearing on plaintiffs' motion for a preliminary injunction, with the Court reserving the right to consolidate the hearing with a final hearing on the merits pursuant to Fed.R.Civ.P. 65(a)(2). Briefs, affidavits, exhibits and testimony have been considered and, the Court having determined that consolidation is appropriate, the matter is now ripe for final resolution. The following constitute the Court's findings of fact and conclusions of law.

Section 1113 of the Defense Act states that any person who is required to register with Selective Service but has failed to do so is ineligible for federal financial assistance. It provides:

> In order to receive any grant, loan, or work assistance under title IV of the Higher Education Act of 1965 (20 U.S.C. 1070 et seq.), a person who is required under section 3 to present himself for and submit to registration under such section shall file with the institution of higher education which the person intends to attend, or is attending, a statement of compliance with section 3 and regulations issued thereunder.

50 U.S.C. app. § 462(f)(2). The Secretary is directed to promulgate regulations to implement the requirements of this subsection. 50 U.S.C. app. § 462(f)(4).

On April 11, 1983, the Secretary issued regulations implementing the Defense Act which included a "model statement of educational purpose and registration compliance." 48 Fed.Reg. 15,578. The registration compliance statement requires students to certify either that they are registered with the Selective Service or are not required to be registered because (1) they are female; (2) they are in the armed forces on active duty; (3) they have not reached their 18th birthday; (4) they were born before 1960; or (5) they are a permanent resident of the Trust Territory of the Pacific Islands or the Northern Mariana Islands. The student is to indicate into which category he or she falls. The schools which plaintiffs attend have adopted forms essentially identical to the model form and plaintiffs, having refused to sign such forms, have been denied financial aid from those schools as a result.

Plaintiffs contend that signing the registration compliance form would unnecessarily require them to cooperate with enforcement of the Selective Service laws, which they feel is morally wrong and not required by law. Plaintiffs' refusals to sign were made in good faith and on the basis of genuine moral beliefs, as the government concedes.[1] It is also undisputed that plain-

---

1. Plaintiff Dickinson, for example, is a practicing member of the Society of Friends (Quakers), a group whose deeply-felt opposition to war under any circumstances is well established.

**434**

tiffs are not in violation of any law, are not required to register for Selective Service, and, but for their failure to complete the requisite form, would each be entitled to receive federal financial aid. It is with these facts in mind that the Court considers the legal issues plaintiffs have raised.

■ Despite plaintiffs' protestations to the contrary, the regulations at issue were clearly authorized by the relevant enabling legislation. The Secretary was directed to promulgate regulations to carry out the purposes of the Defense Act. 50 U.S.C. app. § 462(f)(4). The regulations were developed following full notice and comment, and at least some of the concerns raised by the plaintiffs were specifically addressed by the Secretary.

A practical problem in implementing the Statement of Registration Compliance requirement is the difficulty in identifying which students are required to be registered, especially since some institutions may not have a record of the student's gender or date of birth. Therefore, to minimize the burden on the institution of determining whether a student is required to be registered or is exempt from registration for any of a number of reasons, the Secretary is requiring all title IV aid recipients to complete and submit to the institution the Statement of Registration and Compliance . . . .

48 Fed.Reg. at 15,578.

*Comment:* Several commenters suggested that only males should be required to sign the required Statement of Registration Compliance. Further, some of them asked if a waiver might not be granted for schools which enroll female students exclusively.

*Response:* No change has been made. Often, it is not clear from a student's name whether the student is female. Moreover, since students are often paid by credit adjustments to their accounts,

there may be no easy way—other than the student's signed statement that she is female—to assure that registration was not applicable. Further, the signing of the Statement of Educational Purpose (which is now part of the combined "Statement of Educational Purpose/Registration Compliance["]) must be done by female as well as male students. . . . [T]he Secretary [thus] does not feel that a waiver is necessary, even for schools which only enroll female students.

48 Fed.Reg. 15,580.

The model form set out in the regulations seeks to elicit only such information as is necessary to determine that a student is not disqualified under the Act from receiving federal financial aid. There can be no question, therefore, that these regulations are "reasonably related to the enabling legislation." *Mourning v. Family Publications Service, Inc.,* 411 U.S. 356, 369, 93 S.Ct. 1652, 1661, 36 L.Ed.2d 318 (1973). It is also apparent that the regulations are neither arbitrary nor capricious. They have a rational basis, the Secretary considered relevant factors before issuing the regulations, and it cannot be said that the Secretary clearly erred in determining that the regulations promulgated were the appropriate means of carrying out the purposes of the Act. *See Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971). The Court therefore concludes that the Secretary did not exceed his authority in promulgating the regulations at issue.

■ Plaintiff's First Amendment argument must also fail. While the First Amendment protects *speech* under all but a few circumstances, it cannot easily be stretched to accommodate a belief that minimal "cooperation" with a law is immoral. The present case, moreover, cannot be characterized as one where plaintiffs are being asked to prescribe to a particular view or belief as a condition of receiving a

Ms. Dickinson reached her decision to forego financial aid rather than sign the registration compliance form only after consultation with other members of her faith. She testified that

absent such aid her plans to complete medical school and set up practice caring for the rural poor will be seriously jeopardized.

governmental benefit; nothing on the registration compliance form requires the student to explicitly endorse war or Selective Service registration, and the student is certainly free to append a statement of his or her views in the margin of the form. The present circumstances are thus readily distinguishable from those in cases such as *Wooley v. Maynard*, 430 U.S. 705, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977), and *Board of Education v. Barnette*, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943).

Even were signing of the form to be viewed as some form of "speech," the regulations issued by the Secretary would still withstand constitutional scrutiny. As in *United States v. O'Brien*, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968), the provision at issue "substantially furthers the smooth and proper functioning of the system that Congress has established to raise armies," and is one of several possible "appropriately narrow means of protecting this interest." 391 U.S. at 381–82, 88 S.Ct. at 1681–82. Although, as plaintiffs argue, there may be other possible means for obtaining the information necessary to enforce the Defense Act besides asking the student directly through a written form, the Secretary need not exhaust every conceivable alternative.[2] The means chosen is direct and simple, carries out Congress' directive under the Act, and involves minimal, if any, burden on freedom of speech.[3]

■ Finally, plaintiffs' argument that the regulations violate the Equal Protection Clause of the Fifth Amendment is likewise without merit. Two groups are exempted from the requirement that completion of the registration compliance form is a prerequisite to receipt of federal aid: those who are unable to register because they are incarcerated, hospitalized or institutionalized, and students enrolled in officer procurement programs at certain "military" institutions. 48 Fed.Reg. at 15,578. This distinction "bears some fair relationship to a legitimate public purpose," *Plyler v. Doe*, 457 U.S. 202, 216, 102 S.Ct. 2382, 2394, 72 L.Ed.2d 786 (1982), and has been adequately explained by the Secretary. *See* 48 Fed.Reg. at 3920, 15,581.[4]

Plaintiffs' claims must therefore be dismissed. The Court is not unaware, however, of the hardship this result may have on plaintiffs and other females similarly situated. While the Secretary's position in this dispute can be legally justified, the rigidity with which the Secretary and the educational institutions involved have applied the regulations does not reflect favorably upon them. Here are three women who are in the midst of post-graduate education which they desire to use for the benefit of others. They are violating no law. The conviction of their beliefs cannot be questioned. Yet the Secretary has demonstrated no willingness to offer them any alternative for establishing the obvious fact that they are women and thus not subject to Selective Service registration requirements. Nor have the educational institutions in which plaintiffs are enrolled apparently interceded on their behalf to seek a common-sense solution to the conflict between the government's bureaucratic requirements and plaintiffs' reasoned beliefs. Such rigidity and insensitivity in a very real sense places "form" over substance and needlessly discourages achievement of the goals of the Higher Education Act. The Court does not have the discretionary authority to fashion a solution of this obviously human problem, but hopeful-

---

2. In *O'Brien*, the Supreme Court thus did not require that the challenged statute be the only means available for enforcing the Selective Service laws.

3. Plaintiffs have not invoked the Religion Clause of the First Amendment in support of their position, although they expressly contend that their actions are based on "religious and ethical beliefs." Complaint, ¶ 23. The Court notes, however, that the principle that one's religious beliefs do not justify refusal to comply with Selective Service registration laws is firmly established. *See, e.g., United States v. Bertram*, 477 F.2d 1329 (10th Cir.1973), and cases cited therein.

4. The privacy claims raised by plaintiffs in Count IV of the Complaint are also groundless, and have not been pursued in the briefs or at argument.

ly there are educators or officials in the Department of Education who will do so.

An appropriate Order dismissing the complaint is filed herewith.

### ORDER

Upon consideration of plaintiffs' motion for a preliminary injunction, the opposition thereto, and the affidavits, exhibits and testimony before the Court, for the reasons stated in the Court's accompanying Memorandum it is hereby

ORDERED that plaintiffs' motion is denied; and it is further

ORDERED that the Court having consolidated the hearing on the motion for a preliminary injunction with consideration of the merits the complaint shall be and hereby is dismissed.