John CONYERS, Member, United States
House of Representatives, *et al.,*
Appellants,

v.

Ronald Wilson REAGAN, individually,
and as President of the United
States, et al.

No. 84–5171.

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 18, 1985.

Decided June 28, 1985.

Margaret A. Burnham, New York City, a member of the bar of the Supreme Judicial Court of Mass., pro hac vice, by special leave of court, with whom Michael D. Ratner, Frank E. Deale, New York City, John W. Garland, and William Genego, Washington, D.C., were on brief, for appellants.

John M. Rogers, Atty., Dept. of Justice, Washington, D.C., with whom Richard K. Willard, Acting Asst. Atty. Gen., Joseph E. diGenova, U.S. Atty., and Leonard Schaitman, Atty., Dept. of Justice, Washington, D.C., were on brief, for appellees.

Theodore M. Lieverman, Philadelphia, Pa., Ira J. Katz, Flushing N.Y., and Alan Dranitzke, Washington, D.C., were on brief for amici curiae Nat. Lawyers Guild, et al., urging reversal.

Daniel J. Popeo and Paul D. Kamenar, Washington, D.C., were on brief for amici curiae U.S. Senators Strom Thurmond, et al., urging affirmance.

Before TAMM, WALD and BORK, Circuit Judges.

Opinion for the court filed by Circuit Judge TAMM.

TAMM, Circuit Judge.

This is an appeal from the dismissal, 578 F.Supp. 324 (D.D.C.1984), of a suit brought by eleven members of the United States House of Representatives challenging as unconstitutional the military invasion of Grenada in October of 1983. Because the actions complained of have long since ended, we dismiss the appeal as moot.

## I. BACKGROUND

### A. *The Invasion of Grenada*

On October 25, 1983, United States military forces invaded the island nation of Grenada. At the time of the invasion, the political situation in Grenada was unstable: Prime Minister Maurice Bishop and other government officials had been assassinated on October 19, political power had been seized by a newly established Revolutionary Military Council under the leadership of Army Commander General Hudson Austin, and a 24-hour curfew had been declared. President Reagan stated that he

ordered the invasion to protect innocent lives, including approximately 1,000 Americans living in Grenada, to prevent further chaos and to assist in restoring law and order and government institutions to Grenada.

On November 2, after one week of fighting, armed conflict ceased. All combat troops were withdrawn by December 15, 1983. Approximately 300 United States military personnel remained in Grenada to maintain order and assist in training the Grenadian police force. On February 7 of this year, the State Department announced that these remaining personnel would begin withdrawing in mid-April and that all United States military personnel would leave Grenada by September 30, 1985.[1]

### B. *Procedural History*

On November 17, 1983, the appellants, eleven members of the United States House of Representatives, brought suit against President Reagan, Secretary of Defense Caspar Weinberger, Secretary of State George Schultz, and General John W. Vessey, Chairman of the Joint Chiefs of Staff. Relying solely on the congressional power to declare war under the War Powers Clause of the Constitution, art. I, § 8, cl. 11, the plaintiff congressmen sought a declaratory judgment that the defendants had violated the War Powers Clause and an injunction ordering the defendants to withdraw immediately all United States armed forces, weapons, and military equipment from Grenada.[2]

The defendants filed a motion to dismiss on the grounds of mootness, political question, standing, and the doctrine of equitable discretion. On January 20, 1984, United States District Judge June Green granted the motion to dismiss. Relying on *Riegle v. Federal Open Market Committee*, 656 F.2d 873 (D.C.Cir.), *cert. denied*, 454 U.S. 1082, 102 S.Ct. 636, 70 L.Ed.2d 616 (1981), and subsequent cases from this court, the district court declined to exercise jurisdiction on the basis of its "circumscribed equitable/remedial discretion." Joint Appendix (J.A.) at 38–39. The congressmen appeal from that decision.

### II. DISCUSSION

This case presents a number of intriguing issues—not only on the merits, but also with respect to a nearly full range of threshold justiciability matters. The respective roles of the President and Congress relating to war-making have long been a matter of rich political, judicial, and scholarly debate.[3] The standing doctrine, and in particular, congressional standing, is constantly being refined and sometimes disputed.[4] Similarly, the precise contours of the political question doctrine are not

---

1. Letter from John M. Rogers, Appellate Staff, Civil Division, United States Department of Justice, pursuant to FED.R.APP. P. 28(j) (Feb. 19, 1985).

2. The Senate, on October 28, and the House of Representatives, on November 1, passed separate resolutions declaring that the War Powers Resolution, 50 U.S.C. §§ 1541–1548 (1982), applied to the military involvement in Grenada. *See* 129 CONG.REC. S14877 (Oct. 28, 1983); 129 CONG.REC. H8933–34 (Nov. 1, 1983). Before the two houses could reach agreement, however, efforts to invoke the Resolution were essentially abandoned. *See* Carter, *The Constitutionality of the War Powers Resolution*, 70 VA.L.REV. 101, 106 n. 27 (1984). This case does not involve any claims under the War Powers Resolution.

3. *See generally* L. HENKIN, FOREIGN AFFAIRS AND THE CONSTITUTION (1972); SOFAER, WAR, FOREIGN AFFAIRS AND CONSTITUTIONAL POWERS: THE ORIGINS (1976);

A.V.W. THOMAS & A.J. THOMAS, JR., THE WAR-MAKING POWERS OF THE PRESIDENT (1982); A. Bickel, *Congress, The President and the Power to Declare War*, 48 CHI.[-]KENT L.REV. 137 (1971); Lofgren, *War-Making under the Constitution: The Original Understanding*, 81 Yale L.J. 672 (1972).

4. *See Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 475, 102 S.Ct. 752, 760, 70 L.Ed.2d 700 (1982) ("We need not mince words when we say that the concept of 'Art. III standing' has not been defined with complete consistency...."); *Barnes v. Kline*, 759 F.2d 21 (D.C. Cir.1985). *See generally* McGowan, *Congressmen in Court: The New Plaintiffs*, 15 GA.L.REV. 241 (1981); Nichol, *Rethinking Standing*, 72 CAL. L.REV. 68 (1984).

fully defined.[5] Because these issues do not come to us in the context of a live case or controversy, however, our consideration of them is best left to another day.

■ Article III of the Constitution limits the jurisdiction of federal courts to consideration of actual cases or controversies. *Iron Arrow Honor Society v. Heckler*, 464 U.S. 67, 104 S.Ct. 373, 374, 78 L.Ed.2d 58 (1983); *SEC v. Medical Committee for Human Rights*, 404 U.S. 403, 407, 92 S.Ct. 577, 580, 30 L.Ed.2d 560 (1972). Thus, a federal court may not "give opinions upon moot questions or abstract propositions, or ... declare principles or rules of law which cannot affect the matter in issue in the case before it." *Mills v. Green*, 159 U.S. 651, 653, 16 S.Ct. 132, 133, 40 L.Ed. 293 (1895). A case is moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in outcome." *Powell v. McCormack*, 395 U.S. 486, 496, 89 S.Ct. 1944, 1950, 23 L.Ed.2d 491 (1969).

■ Claiming that they were "deprived of their exclusive right to commit the U.S. Military Forces to a war of aggression," Complaint at 9, J.A. at 15, the plaintiff congressmen brought this action to "challenge[ ] the constitutionality of the invasion of the sovereign state of Grenada." Complaint at 1, J.A. at 7. Because that invasion was terminated by December 15, 1983, when all combat troops were withdrawn,[6] the actions that appellants seek to enjoin "have already occurred and cannot be undone." *Monzillo v. Biller*, 735 F.2d 1456, 1459 (D.C.Cir.1984). Accordingly, their claim for injunctive relief is moot.

■ Appellants argue, in an attempt to avoid mootness, that the mere presence of military personnel in Grenada, under peaceful circumstances, continues to violate the War Powers Clause.[7] This argument, however, essentially raises a new—and somewhat dubious—constitutional claim. As stated above, the complaint in this case challenges the constitutionality of the defendants' unilateral *invasion* of Grenada as a deprivation of the appellants' right to commit United States forces to a *war of aggression;* it does not challenge the defendants' power to control the deployment of military personnel in *peaceful circumstances.*[8] This latter claim, raised for the first time on appeal, cannot resurrect the claims presented in the trial court. *See Powell v. McCormack*, 395 U.S. 486, 499, 89 S.Ct. 1944, 1952, 23 L.Ed.2d 491 (1969) (Where the plaintiff's claim "has become moot and the pleadings are insufficient to determine whether the plaintiff is entitled to another remedy, the action should be dismissed as moot.").

■ That appellants also seek declaratory relief does not affect our mootness determination. The Article III case or controversy requirement is as applicable to declaratory judgments as it is to other forms of relief. *Golden v. Zwickler*, 394

---

5. *See generally* Strum, THE SUPREME COURT AND "POLITICAL QUESTIONS:" A STUDY IN JUDICIAL EVASION (1976); Henkin, *Is There a Political Question Doctrine?* 85 YALE L.J. 597 (1976); Scharpf, *Judicial Review and the Political Question: A Functional Analysis*, 75 YALE L.J. 518 (1966); Tigar, *Judicial Power, the "Political Question Doctrine," and Foreign Relations*, 17 U.C.L.A. L.REV. 1135 (1970).

6. *See Flynt v. Weinberger*, 762 F.2d 134, 135 (D.C.Cir.1985) ("The military action that precipitated the temporary press ban was terminated by December 15, 1983."). In *Flynt*, a publisher challenged the press ban imposed during the initial stages of the Grenada invasion. The district court dismissed the case as moot, and this court affirmed. *See* Cassell, *Restrictions on Press Coverage of Military Operations: The Right*

*of Access, Grenada, and "Off-the-Record-Wars,"* 73 GEO.L.J. 931, 948–49 (1985).

7. Accepting appellants' argument would suggest that a case challenging the constitutionality of the Korean War would not be moot.

8. That appellants essentially raise a separate constitutional claim on appeal is evident from an examination of the relief this court could provide even if we were to reach the merits of their complaint and find that the Grenada invasion violated the War Powers Clause. In that event, we could not provide the injunctive relief sought without first reaching the separate constitutional issue of whether the mere deployment of military personnel abroad without express congressional approval constitutes a violation of the War Powers Clause.

U.S. 103, 108, 89 S.Ct. 956, 959, 22 L.Ed.2d 113 (1969); *Halkin v. Helms,* 690 F.2d 977, 1007 (D.C.Cir.1982). *See generally* 6 J. Moore, Moore's Federal Practice ¶ 57.13 (2d ed. 1983). In determining whether a request for declaratory relief has become moot, " 'the question . . . is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, *of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.*' " *Preiser v. Newkirk,* 422 U.S. 395, 402, 95 S.Ct. 2330, 2334, 45 L.Ed.2d 272 (1975) (emphasis by the court) (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 846 (1941)). As discussed above, the challenged military actions in Grenada have long since ended. The few remaining personnel are withdrawing, and all will have left Grenada in a matter of weeks. In short, the issues raised by appellants are no longer part of a controversy of "sufficient immediacy and reality" to warrant declaratory relief. *Id.*

■■■ Finally, this case is not justiciable under the "capable of repetition, yet evading review" doctrine. *Southern Pacific Terminal Co. v. ICC,* 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911).[9] To find that a case is justiciable under the *Southern Pacific Terminal* doctrine, a court must determine that: "1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, and 2) there [is] a reasonable expectation that the same complaining party would be subjected to the same action again." *Weinstein v. Bradford,* 423 U.S. 147, 149, 96 S.Ct. 347, 348, 46 L.Ed.2d 350 (1975).

■■ Appellants contend that the first prong of this test is met because the invasion ended before there was an opportunity to fully litigate its constitutionality. The question, however, is not whether the particular activity complained of ended before there was an opportunity to fully litigate the dispute. Rather, the proper inquiry is whether "the [challenged] activity is *'by its very nature'* short in duration, 'so that it could not, or probably would not, be able to be adjudicated while fully "live." ' " *Finberg v. Sullivan,* 634 F.2d 50, 55 (3d Cir. 1980) (quoting *Dow Chemical Co. v. EPA,* 605 F.2d 673, 678 n. 12 (3d Cir.1979)) (emphasis added). *See Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 563, 100 S.Ct. 2814, 2820, 65 L.Ed.2d 973 (1980) (plurality opinion) ("jurisdiction is not necessarily defeated by the practical termination of a contest which is *short-lived by nature*") (emphasis added). Undeclared "war[s] of aggression," Complaint at 9, J.A. at 15, unlike elections,[10] trials,[11] pregnancies,[12] or public school years,[13] are not inherently short in duration. The appellants themselves cite the Korean and Vietnam Wars as the two most prevalent examples of "offensive war[s] [initiated] without congressional approval." Brief for Appellants at 24, 25. Those military actions were certainly of sufficient duration to afford litigants the opportunity to challenge

**9.** The capable of repetition yet evading review doctrine properly applies in cases such as the present in which intervening events beyond the control of either the plaintiff or defendant appear to have rendered the claims moot. In cases in which the defendant voluntarily ceases the complained of activity before the matter is litigated, a different standard applies. In such cases the *defendant* must show that there is no reasonable expectation that the alleged violation will recur and that interim relief or events have completely and irrevocably eradicated the effects of the alleged violation. *See City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 289 n. 10, 102 S.Ct. 1070, 1074 n. 10, 71 L.Ed.2d 152 (1982); *United States v. W.T. Grant Co.,* 345 U.S. 629, 632, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953);

*Monzillo v. Biller,* 735 F.2d 1456, 1460 (D.C.Cir. 1984).

**10.** *See, e.g., Moore v. Ogilvie,* 394 U.S. 814, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969).

**11.** *See, e.g., Globe Newspapers Co. v. Superior Court,* 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982).

**12.** *See, e.g., Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973).

**13.** *See, e.g., Hendrick Hudson Dist. Bd. of Ed. v. Rowley,* 458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982).

their constitutionality. *See* Sugarman, *Judicial Decisions Concerning the Constitutionality of United States Military Activity in Indo-China: A Bibliography of Court Decisions,* 13 Colum.J. Transnat'l L. 470 (1974) (discussing more than 70 reported cases). Because appellants have failed to show that this case satisfies the first prong of the *Weinstein* test, therefore, the capable of repetition yet evading review doctrine does not apply.

### III. Conclusion

For the foregoing reasons, we dismiss this appeal as moot and remand the case to the district court with directions to vacate its judgment and order. *See United States v. Munsingwear,* 340 U.S. 36, 40–41, 71 S.Ct. 104, 107, 95 L.Ed. 36 (1950).

*So ordered.*