811 F.2d 1553
 258 U.S.App.D.C. 364
 Louis JULUKE, et al., Appellants,
v.
Donald P. HODEL, Secretary of the Interior Department, et al.
UNITED STATES of America,
v.
Mitchell D. SNYDER and Carol Ann Fennelly, Appellants. (Two Cases)
 Nos. 85-5794, 85-6202, 85-6203.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Nov. 7, 1986.
Decided Feb. 17, 1987.
 
 Appeal from the United States District Court for the District of Columbia (Civil Action No. 85-1962).
 Appeals from the United States District Court for the District of Columbia (Criminal Nos. 85-0222-01 & 02 and 85-0306-01 & 02).
 Mark A. Venuti, Washington, D.C., for appellants.
 John D. Bates, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., Royce C. Lamberth, R. Craig Lawrence and Michael L. Martinez, Asst. U.S. Attys., Washington, D.C., were on the brief for appellee.
 Before EDWARDS and BORK, Circuit Judges, and SWYGERT,* Senior Circuit Judge, United States Court of Appeals for the Seventh Circuit.
 Opinion for the Court filed by Circuit Judge HARRY T. EDWARDS.
 Concurring statement filed by Senior Circuit Judge SWYGERT.
 HARRY T. EDWARDS, Circuit Judge:
 
 
 1
 All three cases that are presently before us on these appeals arise from the same set of events. The appellants in 85-6202 and 85-6203, Snyder and Fennelly, were arrested and convicted for violating federal regulations governing the conduct of demonstrations and prohibiting the placement of parcels on the sidewalk in front of the White House. These appellants seek to overturn their convictions through this appeal. The appellants in 85-5794, four members of the Community for Creative Non-Violence ("CCNV"), including Snyder and Fennelly, brought a separate action in the District Court to enjoin the applications of these regulations to their demonstration. The appellants in the civil appeal seek reversal of the District Court's order refusing to enjoin the enforcement of the "structures" and "parcels" regulations limiting demonstrations on the sidewalk in front of the White House. Because of the similarity of facts and legal arguments in all three appeals, the cases were consolidated for purposes of oral argument.
 
 
 2
 In addition to the appellants' challenges to their convictions and to the denial of injunctive relief, the Government has moved to dismiss the civil action. The Government argues that since, under Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), a federal court will not enjoin an ongoing criminal proceeding in a state court, the trial judge in 85-5794 should have dismissed the appellants' civil action which arose after the prosecution of the criminal actions had commenced in 85-6202 and 85-6203. The Government also claims that a portion of the civil action should be dismissed as moot because of the judgment rendered in the criminal case.
 
 
 3
 We affirm the appellants' convictions, finding that Snyder and Fennelly clearly violated the applicable parcels regulation; on this point, we hold that the regulation is a valid time, place and manner restriction on speech. We also find that the District Court appropriately entertained and proceeded with the civil action in 85-5794, and then properly declined to enter an injunction against the enforcement of the applicable regulations. Finally, we reject the Government's claim that the appellants' civil action should be dismissed, either under Younger or on grounds of mootness.
 
 I. BACKGROUND
 
 4
 The appellants in 85-5794 are members of the Community for Creative Non-Violence, which operates a shelter for the homeless in Washington, D.C. On November 4, 1984, President Reagan announced that the federal government would take steps to upgrade the shelter, but, for various reasons, as of June 1, 1985, such actions had not been taken. In an effort to dramatize the situation and obtain relief, the appellants sought to engage in a demonstration in front of the White House. They wished to employ an ancient Irish method of redressing grievances, in which a "plaintiff," having made his request known to a "defendant" of superior rank to that of the "plaintiff" and having waited a reasonable time without result, sits before the door of the "defendant" and waits for justice to be done. The appellants planned to sit in folding chairs just outside of the White House gate daily from 9:00 a.m. to 5:00 p.m. until the President spoke with them and redressed their grievance.
 
 
 5
 On Friday, June 14, 1985, at 9:00 a.m., three of the appellants, Juluke, Snyder and Fennelly, arrived at the White House gate and asked for an audience with the President. When told that he was not available to meet with them, they unfolded their chairs on the sidewalk and sat in them. Shortly thereafter, U.S. Park Police informed the appellants that federal regulations prohibited the placement of chairs on the White House sidewalk and that, if the chairs were not removed, the appellants would be arrested. Juluke got up, folded his chair, and withdrew. Snyder and Fennelly remained in their chairs and were arrested and charged with violating 36 C.F.R. Sec. 50.19(e)(8)(i) (1986) (the "structures" regulation).[1] The defendants were subsequently charged with violating 36 C.F.R. Sec. 50.19(e)(10) (1986) (the "parcels" regulation) as well.[2]
 
 
 6
 The appellants returned to the White House sidewalk on June 17 to continue their demonstration, and again were informed that they were in violation of the regulations. Juluke once again withdrew, but Snyder and Fennelly were again arrested and charged with violating the structures and parcels regulations. Meanwhile, four members of CCNV filed a civil action in the District Court on June 17, 1986, seeking to enjoin the enforcement of the structures and parcels regulations. The district judge denied the appellants' application for a temporary restraining order on June 17, 1986,[3] and entered judgment against the CCNV members on July 3, 1986.[4]
 
 
 7
 The defendants in the criminal actions filed a motion to dismiss that was granted as to the "structures" counts and denied as to the "parcels" counts.[5] A trial was held, and the defendants were convicted on the parcels counts, and fined $25 each per count.
 
 
 8
 The plaintiffs in the civil action have appealed the District Court's ruling on the merits for the defendants. The defendants have filed a motion to dismiss the civil action in this court. The defendants in the criminal cases have appealed their convictions. Because of the similarity of facts and legal arguments, the three appeals were consolidated for purposes of oral argument and decision.
 
 II. ANALYSIS
 A. Government's Motion to Dismiss
 
 9
 We are first confronted by the Government's motion to dismiss the civil action. Apparently, the Government is seeking to extend the holding of Younger v. Harris[6]--that a federal court will not enjoin an ongoing criminal proceeding in state court--to cover the situation in which parallel civil and criminal proceedings take place in federal court. Not only can we find no support for such an extension of Younger, but any such extension would be flatly at odds with the prevailing case law. Furthermore, even under a wholly distorted view of Younger--which would be necessary to make its principles applicable to this situation--the facts of this case support the decision by the District Court not to dismiss the civil action.
 
 
 10
 1. Younger v. Harris and "Our Federalism"
 
 
 11
 Younger v. Harris was one of six cases decided the same day in which the Supreme Court addressed the proper relationship between the federal courts and state criminal prosecutions.[7] In Younger, the Supreme Court identified "[t]he precise reasons for [the] longstanding public policy against federal court interference with state court proceedings."[8] In so doing, the Court began with basic principles of equity jurisprudence, but noted that "an even more vital consideration, the notion of 'comity,' " is involved in situations in which federal courts are asked to enjoin proceedings in state court.[9] The principle, dubbed "Our Federalism," that "National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways,"[10] led the Court to conclude that, absent special considerations, a federal court will not enjoin proceedings in a state court unless "the threat to the plaintiff's federally protected rights [is] one that cannot be eliminated by his defense against a single criminal prosecution."[11]
 
 
 12
 Thus, Younger, at its core, is a case about the proper relationship between federal and state courts. Younger is not merely a principle of abstention; rather, the case sets forth a mandatory rule of "equitable restraint," requiring the dismissal of a federal action that seeks to enjoin an ongoing prosecution in a state criminal proceeding. Because of its potentially drastic effects--i.e., denying a litigant a federal forum to pursue an otherwise legitimate constitutional claim--Younger has been specifically limited in its application. So far as we can tell--and the Government has been unable to cite any cases to the contrary--Younger never has been applied by the Supreme Court or this court in a situation involving civil and criminal proceedings in separate federal court actions. It is a case mostly about considerations of federalism. We do not intend to indulge a strained reading of Younger in order to apply it here in a context in which it was never intended to operate.
 
 
 13
 The only conceivable relevance that Younger may have to the case before us is its statement concerning general principles of equity jurisprudence: "that courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief."[12] To the extent that this suggests that the District Court judge in the civil case had discretion to defer action in the proceeding before him pending resolution of the criminal case, the principle is unexceptional. It cannot be read, however, to have required the judge to dismiss the civil action merely because of the existence of the criminal proceeding. The absurdity of such a result is highlighted by the facts in these cases.
 
 
 14
 The only conceivable reason not to consider the claim for injunctive relief in the civil case was that it would have been inefficient to do so, because the same issues--the validity and applicability of the regulations--would be decided in the criminal action. That, however, merely restates the traditional test for denying the consideration of equitable relief--that there is an adequate remedy available at law. We find this reason pursuasive as to whether one court may enjoin an ongoing prosecution in another court. However, this is not the relief that the CCNV members sought. The appellants wished to continue their demonstration on the White House sidewalk, but faced almost certain prosecution in the future if they were to do so. Thus, they sought to enjoin future arrests for violations of the structures and parcels regulations. They never sought to enjoin the existing prosecutions. Nor could adjudication of the criminal cases afford them adequate relief. If they were to await the conclusion of trial, many days would be lost. The district judge acted properly in considering whether a temporary restraining order and, later, an injunction should issue.
 
 
 15
 Even taking a strained view of Younger, and attempting to apply its principles to this case, it is clear that the district judge did not err in hearing the case. In order for Younger to operate, the civil dispute must entail injunctive relief over an ongoing criminal prosecution. When the civil action does not seek to enjoin an ongoing prosecution and where the movants are not being prosecuted, an injunction may issue. These points were made most clearly by the Supreme Court in Doran v. Salem Inn, Inc.[13] Doran involved a challenge to a local ordinance prohibiting topless dancing in bars. The owners of three bars where topless dancing had been featured sought a temporary restraining order and a preliminary injunction against the enforcement of the ordinance. After the suit was filed, one of the bars resumed its showing of topless dancing and the bar owner was prosecuted; the other two did not. The District Court granted the preliminary injunction and the Second Circuit affirmed. The Supreme Court held that an injunction could issue in favor of the two bar owners that had not been prosecuted. The fact that the three bar owners had common counsel, and that the federal action shared similar issues with the state court proceeding was not deemed relevant.[14]
 
 
 16
 Applying Doran to this case, it is clear that, at least as to Juluke and Moss, consideration of the claims for injunctive relief was proper despite the ongoing prosecution of Snyder and Fennelly. Nor does Hicks v. Miranda[15] compel a different result. In Hicks, there was identity of parties in the criminal and civil actions.[16] Even as to Snyder and Fennelly, it is not clear that Younger principles should bar an injunction against future enforcement. See HART & WECHSLER, supra note 16, at 279 (1981 Supp.); Laycock, Federal Interference with State Prosecutions: The Need for Prospective Relief, 1977 SUP.CT.REV. 193, 238 ("Even though they refuse to enjoin the first prosecution, federal courts should not deny relief with respect to contemplated future violations."); see also Wooley v. Maynard, 430 U.S. 705, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977); Ealy v. Littlejohn, 569 F.2d 219 (5th Cir.1978).
 
 
 17
 For all of the foregoing reasons, we flatly reject the Government's motion to dismiss on grounds of equitable restraint under Younger v. Harris.
 
 
 18
 2. Other Grounds for Dismissal Cited by the Government
 
 
 19
 The Government also relies on two other doctrines to support its view that the civil action should be dismissed. First, it cites Kerotest Manufacturing Co. v. C-O-Two Fire Equipment Co.[17] Kerotest raised the question of whether an action brought in one district court could be dismissed if the same issue was being litigated in another district court between the same parties. C-O-Two brought a patent infringement action in the Northern District of Illinois against a customer of Kerotest. Thereafter, Kerotest brought a proceeding against C-O-Two in Delaware district court seeking a declaration that the patents sued on in the Illinois action were invalid. C-O-Two then joined Kerotest as a defendant in the Illinois action and sought to stay the Delaware action. The Supreme Court held that the Third Circuit did not abuse its discretion in staying the Delaware proceedings.
 
 
 20
 To the extent that Kerotest has any application here, it supports upholding the District Court's decision. As the Supreme Court noted:
 
 
 21
 The factors relevant to wise administration here are equitable in nature. Necessarily, an ample degree of discretion, appropriate for disciplined and experienced judges, must be left to the lower courts.... Even if we had more doubts than we do about the analysis made by the Court of Appeals, we would not feel justified in displacing its judgment with ours.[18]
 
 
 22
 Similarly, we must view the District Court's decision here under an abuse of discretion standard.[19] We do not see any abuse of discretion. Indeed, given the difference in the relief to be afforded in the civil case as compared with the criminal case, and the lack of identity of parties, we think that the equities weighed in favor of hearing the civil action. Unlike in Kerotest, where the interest of all the parties could be accommodated in the Illinois action, the nature of the relief sought in the civil action here is such that the criminal action could not afford the civil plaintiffs the relief that they sought.
 
 
 23
 The Government also identifies several cases purporting to postpone civil adjudication pending developments in a criminal prosecution. The cases do not support the Government's position.[20] Contrary to the position of the Government, we see a consistent pattern in these cases that favors the decision reached below. First, these cases recognize that whether to exercise a court's equitable powers is a matter for the trial judge's discretion. Second, traditional equity concepts govern that decision. Here, the district judge determined that an adequate remedy did not exist at law, and, if the plaintiffs in the civil action were correct in their assertion that the structures and parcels regulations were unlawful, they would suffer irreparable injury. The District Court judge did not abuse his discretion in reaching the merits in the civil action.[21]
 
 B. Mootness
 
 24
 Apart from the foregoing issues, the Government also claims that the portion of the civil action addressing the structures regulation should now be dismissed as moot because the criminal cases have been decided. We cannot comprehend this argument. All that has been decided in the criminal case is whether past violations of the structures and parcels regulations have occurred. However, both before the District Court and before us, the appellants in the civil case have sought prospective relief against enforcement of the regulations in ongoing and future demonstrations. If the appellants were to prevail on the merits in the civil case, an injunction arguably would be appropriate. Thus, the resolution of the criminal cases have in no way affected the relief sought in the civil case, and a live controversy remains for disposition.[22]
 
 C. The Merits
 1. The Parcels Regulation
 
 25
 The starting point for our analysis is this court's opinion in White House Vigil for the ERA Committee v. Clark, 746 F.2d 1518 (D.C.Cir.1984). In White House Vigil, we identified the legal standards to be applied in reviewing regulations that impose time, place and manner restrictions on speech. Such regulations are valid "so long as the restrictions are content-neutral, are narrowly tailored to serve a significant governmental interest, and leave open ample alternative channels of communication." 746 F.2d at 1527 (footnote omitted); see Clark v. Community for Creative Non-Violence, 468 U.S. 288, 293, 104 S.Ct. 3065, 3069, 82 L.Ed.2d 221 (1984). There is no question that, as to speech, the parcels regulation is content-neutral. It is also clear that it leaves open ample alternate channels of communication. The crux of the issue is whether the parcels regulation is narrowly tailored to serve a significant governmental interest. The CCNV members contend that the governmental interest at stake is safety and safety alone. They admit that the Government has an interest in restricting unattended parcels because of the possibility of such parcels containing explosives. But, when the parcel is attached to the body, as in a parcel that is held or a chair that is being sat in, there is little danger of explosion.[23] Thus, according to the appellants, the parcels regulation is not narrowly tailored if interpreted to proscribe sitting on chairs.
 
 
 26
 This argument assumes, however, that safety is the only interest served by the regulation. While safety is an important, if not primary interest, traffic flow and aesthetics are also legitimate interests:
 
 
 27
 The regulations also clearly serve a "substantial governmental interest." No one can deny the substantiality or the significance of America's interest in presidential security. At stake is not merely the safety of one man, but also the ability of the executive branch to function in an orderly fashion and the capacity of the United States to respond to threats and crises affecting the entire free world. Nor is the interest in pedestrian safety and traffic insubstantial; the value of sidewalks as public fora would be considerably vitiated were the state unable to provide for the orderly passage of those persons who use them. Finally, the government has a substantial interest in the preservation and enhancement of the human environment; aesthetics are a proper focus of governmental regulation.
 
 
 28
 White House Vigil, 746 F.2d at 1528 (footnotes omitted); see also Clark v. CCNV, 468 U.S. at 296, 104 S.Ct. at 3070 (Government has a "substantial interest in maintaining the parks in the heart of our Capital in an attractive and intact condition.").
 
 
 29
 But, even if it were possible to write a regulation that is more narrowly tailored to its objectives than is the parcels regulation, it is not our job to fashion such a regulation:
 
 
 30
 The expertise of courts lies in determining whether an agency's decision is within the zone of constitutionality, not in choosing between options within that zone. A court may not require that the agency adopt the "least restrictive alternative," thereby substituting its judgment for that of the regulators.
 
 
 31
 White House Vigil, 746 F.2d at 1531 (footnotes omitted); see also Clark v. CCNV, 468 U.S. at 299, 104 S.Ct. at 3072 ("We do not believe that [prior cases] ... assign to the judiciary the authority to replace the Park Service as the manager of the Nation's parks....").
 
 
 32
 Just as we rejected the "finetuning" of clear language in White House Vigil, 746 F.2d at 1541 & n. 145, we limit our inquiry here to whether the regulation as written is unconstitutional. Just as in White House Vigil, we find the regulation to be narrowly tailored to achieve the legitimate objectives of security, traffic flow and aesthetics.
 
 
 33
 The words of the regulation clearly cover this event. CCNV members admit that if they had placed the chairs on the sidewalk but had not sat in them, they would have violated the parcels regulation. We do not see any relevant difference in the fact that, after placing the chairs on the sidewalk, the appellants then sat in the chairs.
 
 
 34
 We admit that it is possible to read "other property" in the parcels regulation to encompass many items, including a cane, a person's shoes or a handicapped person's wheelchair, thus potentially making virtually anybody who is on the White House sidewalk more than momentarily subject to arrest based on the parcels regulation. However, we believe that the Government is entitled to the benefit of assuming that it will exercise some "common sense" in its enforcement of the regulation. Moreover, some people, such as the handicapped, might be able to avail themselves of other defenses to a prosecution, such as an equal protection claim. It is also possible that, if faced with such a situation, a court could decide that objects indispensible to the person, such as a wheelchair for a handicapped person, are not "other property." In any event, we do not think it necessary for such a small tail to wag such a large dog. Virtually all statutes and regulations are susceptible of interpretations that would encompass nonsensical results. Absent some demonstrable possibility that the regulation would be so interpreted, we decline to invalidate the regulation on that basis.
 
 2. The Structures Regulation
 
 35
 The District Court failed to grant injunctive relief on the structures claim in the civil action. The court noted, however, that its "construction of the regulation may or may not sustain a criminal prosecution."[24] Subsequently, in the criminal action, the court ruled that the structures regulation was unconstitutional, at least as applied to Snyder and Fennelly.[25]
 
 
 36
 We think it plain that a chair is not a structure as that word is commonly used. Accordingly, the regulation is vague to the extent it purports to encompass chairs absent more specific definition. It is not necessary for us to void the regulation, however, because the Government informed us, at oral argument, that it has adopted better defined structures language. Given that the use of chairs is barred by the parcels regulation, that there were no convictions on the structures regulations and that the Government will no longer consider chairs to be structures, there is no need to alter the decisions below.[26]
 
 3. Selective Enforcement
 
 37
 Finally, the appellants allege that the Government is engaging in selective enforcement of the regulations. However, we think that the appellants have failed to carry their burden in showing either that they were singled out from others similarly situated or that their prosecution was improperly motivated. See Wayte v. United States, 470 U.S. 598, 608, 105 S.Ct. 1524, 1531, 84 L.Ed.2d 547 (1985). Given the paucity of evidence presented on this point, we see no need to overturn the decisions below.
 
 
 38
 The appellants' evidence of selective enforcement is based primarily on casual observation that people who were at the White House sidewalk at the time the appellants were arrested, including tourists and members of the media, were not charged with an offense even though they violated the parcels regulation.[27] However, the Government refuted this claim through the affidavit of United States Park Police Lieutenant James J. McLaughlin.[28] The only other evidence presented was that, when Juluke folded up his chair and held it so that it was resting on the sidewalk, he was not arrested.[29] We agree with the two District Court judges that the appellants have failed to meet their burdens of proof regarding these claims of selective enforcement.
 
 III. CONCLUSION
 
 39
 The judgments below in 85-6202 and 85-6203 are affirmed. The decision below in 85-5794 is affirmed. The appellees' motion to dismiss in 85-5794 is denied.
 
 
 40
 So Ordered.
 
 
 41
 SWYGERT, Senior Circuit Judge, concurring.
 
 
 42
 Only because I believe that the decision of this court in White House Vigil for the ERA Committee v. Clark, 746 F.2d 1518 (D.C.Cir.1984), must guide us in resolving the constitutionality of the parcels regulation do I concur with the majority on that issue. I find no difficulty with the majority's views on the remaining issues presented in these appeals.
 
 
 
 *
 Sitting by designation pursuant to 28 U.S.C. Sec. 294(d) (1982)
 
 
 [1]
 36 C.F.R. Sec. 50.19(e)(8)(i) reads as follows:
 (i) No structures shall be permitted on the White House sidewalk.
 The White House sidewalk is defined in 36 C.F.R. Sec. 50.19(a)(5) (1986) as the "south sidewalk of Pennsylvania Avenue, NW., between East and West Executive Avenues, NW."
 
 
 [2]
 36 C.F.R. Sec. 50.19(e)(10) reads as follows:
 (10) No parcel, container, package, bundle or other property shall be placed or stored on the White House sidewalk or on the west sidewalk of East Executive Avenue, N.W., between Pennsylvania Avenue, N.W., and E Street, N.W., or on the north sidewalk of E Street, N.W., between East and West Executive Avenues, N.W.; Provided, however, that such property, except structures may be momentarily placed or set down in the immediate presence of the owner on those sidewalks.
 
 
 [3]
 Juluke v. Hodel, No. 85-1962 (D.D.C. June 20, 1985) (Oberdorfer, J.)
 
 
 [4]
 Juluke v. Hodel, No. 85-1962 (D.D.C. July 3, 1986) (Oberdorfer, J.)
 
 
 [5]
 United States v. Snyder, No. 85-0222 (D.D.C. Dec. 6, 1985) (Green, J.H., J.)
 
 
 [6]
 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971)
 
 
 [7]
 See Byrne v. Karalexis, 401 U.S. 216, 91 S.Ct. 777, 27 L.Ed.2d 792 (1971); Dyson v. Stein, 401 U.S. 200, 91 S.Ct. 769, 27 L.Ed.2d 781 (1971); Perez v. Ledesma, 91 S.Ct. 674, 27 L.Ed.2d 701, 401 U.S. 82 (1971); Boyle v. Landry, 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696 (1971); Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971)
 
 
 [8]
 401 U.S. at 43, 91 S.Ct. at 750 (emphasis added)
 
 
 [9]
 Id. at 44, 91 S.Ct. at 750
 
 
 [10]
 Id
 
 
 [11]
 Id. at 46, 91 S.Ct. at 751
 
 
 [12]
 Id. at 43-44, 91 S.Ct. at 750
 
 
 [13]
 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975)
 
 
 [14]
 Id. at 929, 95 S.Ct. at 2566-67
 
 
 [15]
 422 U.S. 332, 95 S.Ct. at 2281, 45 L.Ed.2d 223 (1975)
 
 
 [16]
 Although some of the plaintiffs in Hicks were not subject to criminal prosecution on the date of suit, they were charged with a violation on the day following the completion of service of the complaint. See id. at 349, 95 S.Ct. at 2291-92. The Supreme Court held that "where state criminal proceedings are begun against the federal plaintiffs after the federal complaint is filed but before any proceedings of substance on the merits have taken place in the federal court, the principles of Younger v. Harris should apply in full force." Id
 Interestingly, Doran does not cite or mention Hicks. See P. BATOR, P. MISHKIN, D. SHAPIRO & H. WECHSLER, HART AND WECHSLER'S THE FEDERAL COURTS AND THE FEDERAL SYSTEM 278 (1981 Supp.) [hereinafter HART & WECHSLER].
 
 
 [17]
 342 U.S. 180, 72 S.Ct. 219, 96 L.Ed. 200 (1952)
 
 
 [18]
 Id. at 183-84, 72 S.Ct. at 221
 
 
 [19]
 See Doran, 422 U.S. at 932, 95 S.Ct. at 2568; Brown v. Chote, 411 U.S. 452, 457, 93 S.Ct. 1732, 1735-36, 36 L.Ed.2d 420 (1973); Foundation on Economic Trends v. Heckler, 756 F.2d 143, 151 (D.C.Cir.1985)
 
 
 [20]
 Widmer v. Stokes, 464 F.2d 592 (5th Cir.1972), raised the question whether a district court judge abused her discretion in dismissing a civil action brought by Widmer seeking declaratory relief and an injunction against his prosecution for a violation of a statute. The district court concluded that such relief was not warranted because there was an adequate remedy at law--Widmer could assert his claims in defending any criminal prosecution that might ensue
 In McFadden v. Selective Service System, 415 F.2d 1140 (9th Cir.1969), the Ninth Circuit affirmed the dismissal of a civil action brought by a person who refused induction into military service because the criminal action was pending and would afford him an adequate opportunity to raise his claims. The circuit court reserved judgment, however, as to whether the dismissal of the claims of other plaintiffs in the action, who were not under prosecution, was within the district court's discretion. 415 F.2d at 1141. The Ninth Circuit later affirmed dismissal of the claim of one of the other plaintiffs, but reversed the order of the District Court dismissing the claims of the remaining plaintiffs. See McFadden v. Selective Serv. Sys., 423 F.2d 1291, 1292 (9th Cir.1970).
 Similarly, in Hendricks v. Hogan, 324 F.Supp. 1277, 1283-84 (S.D.N.Y.1971), the court held that it need not convene a three-judge panel to hear challenges to a federal statute that was already being contested in a criminal action, where there was no future threat of prosecution.
 
 
 [21]
 The District Court refused to issue an injunction because the plaintiffs' legal claims lacked merit. A denial on the merits, however, is quite different from a refusal to hear the claim
 
 
 [22]
 It is possible to argue that the civil case is now moot if the appellants no longer intend to demonstrate and thus will not in the future be subject to prosecution under the challenged regulations. However, neither the Government nor the appellants raise this mootness argument either in their briefs or in oral argument before this court. This is not surprising because the appellants sought both declaratory and injunctive relief in the civil action. Complaint for Declaratory and Injunctive Relief p 2; see Better Gov't Ass'n v. Department of State, 780 F.2d 86, 91 (D.C.Cir.1986) (Even if a challenge to a specific application of a regulation to a party is rendered moot, a challenge to the facial validity of the regulation may still present a live controversy.). Furthermore, no one doubts that the members of CCNV are likely to continue with demonstrations at the White House and therefore fear future prosecution
 
 
 [23]
 This assumes that terrorists, who might bring parcels containing explosives, are not suicidal
 
 
 [24]
 Juluke, slip op. at 6
 
 
 [25]
 Although the District Court's opinion in Snyder appears to invalidate the structures regulation on its face, slip op. at 17, we believe that the essence of Judge Green's decision finding the regulation to be vague is that the word structure is not defined in the regulation and is not being used in accordance with its customary meaning. If structure were given its usual meaning or else defined in the regulation, it might not be vague
 
 
 [26]
 The National Park Service has promulgated new regulations governing demonstrations on the White House sidewalk. 51 Fed.Reg. 37,008, 37,012-15 (1986) (to be codified at 36 C.F.R. Sec. 7.96(g)). The language of the structures and parcels regulations are unchanged. Id. at 37,014. However, "structure" is now explicitly defined:
 For the purpose of this section, the term "structure" includes props and displays, such as coffins, crates, crosses, theaters, cages, and statues; furniture and furnishings, such as desks, chairs, tables, bookcases, cabinets, platforms, podiums and lecterns; shelters, such as tents, boxes, and other enclosures; wagons and carts; and all other similar types of property which might tend to harm park resources including aesthetic interests. Provided however that the term "structure" does not include signs; bicycles, baby carriages and baby stollers lawfully in the Park that are temporarily placed in, or are being moved across, the Park, and that are attended at all times while in the Park (the term "attended["] is defined as an individual being within three (3) feet of his or her bicycle, baby carriage or baby stroller); and wheelchairs and other devices for the handicapped in use by handicapped persons.
 Id. at 37,014-15. We express no view as to whether the structures regulation, as modified by this definition of "structure," is unconstitutionally vague or overbroad, nor do we comment on the fact that the Government stated at oral argument that it would not prosecute persons sitting in chairs on the White House sidewalk under the structures regulation, despite explicit language in the definition of "structure" that appears to consider a chair to be a structure for purposes of the structures regulation.
 
 
 [27]
 See Declaration of Mary Ellen Hombs, Juluke, Record Document No. 16. Ms. Hombs' statement is accompanied by photographs purporting to show violations of the parcels regulation
 
 
 [28]
 Affidavit of James J. McLaughlin, Juluke, Record Document No. 17. Lieutenant McLaughlin stated that he advised Sergeant Dennis Smith to warn the persons identified in the the photographs attached to Hombs' statement that they were in violation of the regulations, and that, after allowing time for voluntary compliance, no arrests were necessary
 
 
 [29]
 Even if Juluke could have been charged, we do not think that this one instance points to a pattern of selective enforcement. Moreover, there is good reason to believe that resting an object on the sidewalk while still maintaining control over its position is not a placement of the object on the sidewalk within the meaning of the regulation