Michael K. DEAVER, Appellant,

v.

Whitney North SEYMOUR, Jr., as
Independent Counsel, et al.

No. 87–5056.

United States Court of Appeals,
District of Columbia Circuit.

June 15, 1987.

See also, 656 F.Supp. 900.

Whitney North Seymour, Jr. and George
F. Hritz, New York City, were on the oppo-
sition.

Herbert J. Miller, Jr., Randall J. Turk
and Stephen L. Braga, Washington, D.C.,
were on the motion.

ON APPELLANT'S EMERGENCY
MOTION FOR A STAY

Before SILBERMAN, WILLIAMS and
GINSBURG, Circuit Judges.

Opinion for the Court filed by
Circuit Judge SILBERMAN.

Separate Concurring Statement filed
by Circuit Judge D.H. GINSBURG.

SILBERMAN, Circuit Judge:

This case involves a challenge by former
White House Deputy Chief of Staff Mi-
chael K. Deaver to the constitutionality of
the independent counsel provisions of the
Ethics in Government Act, 28 U.S.C. §§ 49,
591–98 (1982 & Supp. III 1985). Deaver
filed a civil complaint in federal district
court seeking declaratory and injunctive re-
lief from independent counsel Whitney
North Seymour, Jr.'s continued exercise of
prosecutorial authority. Following the dis-
trict court's denial of his motion for a pre-
liminary injunction, Deaver appealed to this
court and moved for an Emergency Stay to
preserve the status quo until we deter-
mined the constitutionality *vel non* of the
Act. He alleged that absent a stay he
would suffer imminent, irreparable harm in
the form of a criminal indictment obtained
by Seymour. In an Order dated March 17,
1987, we held that Deaver's lawsuit consti-
tuted an impermissible preemptive civil
challenge to a criminal proceeding. Ac-
cordingly, we denied the motion for Emer-

gency Stay, and on our own motion, summarily affirmed the district court's denial of a preliminary injunction. We then ordered the case remanded to the district court with directions to dismiss the complaint. We now explain that decision.

## I.

From 1981 until 1985, Michael Deaver served as White House Deputy Chief of Staff and Assistant to the President of the United States. In May of 1985, Deaver left his position at the White House and established the firm of Michael K. Deaver and Associates, a lobbying association of which he is the president. Thereafter, Deaver's contacts with government officials on behalf of his clients became the object of public scrutiny. On April 23, 1986, five members of the United States Senate wrote to the Attorney General and, pursuant to 28 U.S.C. § 595(e) (1982),[1] requested the appointment of an independent counsel to investigate Deaver's lobbying activities. Amid growing public speculation concerning the possible impropriety of his contacts with former White House associates on behalf of his clients, Deaver himself requested that an independent counsel be appointed. Finding reasonable grounds to warrant further investigation or prosecu-

tion, the Deputy Attorney General on May 22, 1986 applied to a special division of this court for appointment of an independent counsel.[2] The application detailed alleged attempts by Deaver to lobby the White House on behalf of two clients, the Government of Canada and the Commonwealth of Puerto Rico, and requested an investigation to determine whether prosecution was warranted for violations of 18 U.S.C. § 207 (1982)[3] or any other federal criminal law.

One week later, the court appointed Whitney North Seymour, Jr. to serve as independent counsel. After organizing a staff and arranging for a grand jury, Seymour began a nine-month investigation into Deaver's lobbying activities. On February 24, 1987, Seymour informed Deaver that he was about to ask the grand jury to return an indictment. The next day, Deaver filed this civil action claiming the Ethics in Government Act is unconstitutional because it vests prosecutorial authority, which belongs exclusively to the Executive branch, in an individual who is not subject to presidential appointment, control, or removal. Deaver moved to enjoin preliminarily Seymour's efforts to obtain an indictment, contending that immediate and irreparable harm would befall him if equitable relief were not granted. He asserted that if Seymour's activities were not halted, he

---

1. Section 595(e) provides:
   A majority of majority party members or a majority of all nonmajority party members of the Committee on the Judiciary of either House of the Congress may request in writing that the Attorney General apply for the appointment of a[n] independent counsel. Not later than thirty days after the receipt of such a request, or not later than fifteen days after the completion of a preliminary investigation of the matter with respect to which the request is made, whichever is later, the Attorney General shall provide written notification of any action the Attorney General has taken in response to such request and, if no application has been made to the division of the court, why such application was not made. Such written notification shall be provided to the committee on which the persons making the request serve, and shall not be revealed to any third party, except that the committee may, either on its own initiative or upon the request of the Attorney General, make public such portion or portions of such notification as will not in the committee's judgment prejudice the rights of any individual.

2. The Act provides for the assignment of three Circuit Judges to a division of the United States Court of Appeals for the District of Columbia Circuit for the purpose of appointing independent counsels. See 28 U.S.C. § 49 (1982). If the Attorney General, upon completion of a preliminary investigation, finds "reasonable grounds" to believe that further investigation or prosecution is warranted, or, if within ninety days after receiving "information" sufficient to preliminarily investigate a person, fails to find that no investigation or prosecution is warranted, then the Attorney General "shall apply to the division of the court for appointment of a[n] independent counsel." 28 U.S.C. § 592(c)(1) (1982). The Attorney General recused himself from this matter and appointed the Deputy Attorney General to act in his place.

3. Section 207 prohibits former high-level federal employees from lobbying the government under certain circumstances in connection with matters for which they had responsibility as government officials.

would suffer the "continuing destruction of his business," "injury to his reputation and dignity," and "the expenditure of substantial resources in his defense."

The district court temporarily restrained Seymour from seeking an indictment. Later, however, applying the four-part test set out by this court in *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C.Cir.1977), the court denied the motion for a preliminary injunction. The district court concluded that any harm Deaver might suffer as the result of a criminal indictment was not irreparable because there existed an adequate remedy at law, since Deaver could move to dismiss the charges under Federal Rule of Criminal Procedure 12(b)(1) for "defects in the institution of the prosecution." The court also concluded that Deaver had failed to demonstrate the likelihood of ultimate success on the merits because, in the district court's view, the Act would probably not be found to offend the Constitution. Finally, the court concluded the public interest required that any possible violations of the criminal law be speedily prosecuted, an interest most likely secured by allowing Seymour immediately to seek an indictment.

Although the denial of Deaver's application for a preliminary injunction is an interlocutory order appealable under 28 U.S.C. § 1292(a)(1) (1982),[4] the district court in addition certified for this court's review the question of the constitutionality *vel non* of the Act as a "controlling question of law" pursuant to 28 U.S.C. § 1292(b) (1982).[5] Deaver immediately appealed the district court's order and sought emergency injunctive relief to preclude an indictment pending our review. We entered a five-day

administrative stay and ordered the parties to file supplemental briefs.

On March 17, 1987, after considering the supplemental briefs, we dissolved our administrative stay, denied Deaver's Emergency Motion for Stay, affirmed the district court's denial of his motion for a preliminary injunction, and remanded the case with directions to dismiss the complaint.

## II.

The district court, applying the *Holiday Tours* test, thought it necessary to consider the likelihood that appellant would succeed on the merits of his constitutional challenge to the authority of the independent counsel. We do not. Even were we disposed to agree entirely with appellant's constitutional argument, we think he has no right to an injunction restraining a pending indictment in a federal court.

The traditional rule, dating back to the English division between courts of law and equity, was that the latter had "no jurisdiction over the prosecution, the punishment or the pardon of crimes or misdemeanors" and therefore could not enjoin criminal proceedings, *In re Sawyer*, 124 U.S. 200, 210, 8 S.Ct. 482, 487, 31 L.Ed. 402 (1888). Departing somewhat from this rule around the turn of the century, the Supreme Court in certain cases permitted federal courts to issue injunctions against *state* court criminal proceedings that threatened federal constitutional rights. *See, e.g., Dobbins v. Los Angeles*, 195 U.S. 223, 241, 25 S.Ct. 18, 22, 49 L.Ed. 169 (1904) (court of equity may enjoin prosecution under void law where property rights would otherwise be destroyed); *Truax v. Raich*, 239 U.S. 33, 38, 36 S.Ct. 7, 9, 60 L.Ed. 131 (1915) (court may enjoin enforcement of unconstitutional criminal law when essential to protect right

---

**4.** Section 1292(a)(1) provides "[T]he courts of appeals shall have jurisdiction of appeals from: (1) Interlocutory orders of the district courts of the United States ... granting, continuing, modifying, refusing or dissolving injunctions...." 28 U.S.C. § 1292(a)(1) (1982).

**5.** Section 1292(b) provides:
When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that

such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals may thereupon, in its discretion, permit an appeal to be taken from such order....
28 U.S.C. § 1292(b) (1982).

to earn a livelihood). A federal injunction was available to prevent state officers from instituting criminal proceedings "under extraordinary circumstances where the danger of irreparable loss [of a constitutional right was] both great and immediate." *See Fenner v. Boykin*, 271 U.S. 240, 243, 46 S.Ct. 492, 493, 70 L.Ed. 927 (1926).

More recently however, the Court, troubled by notions of comity, tightened the criteria for granting federal injunctions that interfere with state criminal proceedings, holding that the "cost, anxiety, and inconvenience of having to defend against a single criminal prosecution" are not recognized as irreparable injuries justifying an equitable remedy. *Younger v. Harris*, 401 U.S. 37, 46, 91 S.Ct. 746, 751–52, 27 L.Ed.2d 669 (1971). *See also Bokulich v. Jury Commission of Greene County*, 394 U.S. 97, 98, 89 S.Ct. 767, 768, 22 L.Ed.2d 109 (1969); *Spielman Motor Sales Co., Inc. v. Dodge*, 295 U.S. 89, 96, 55 S.Ct. 678, 681, 79 L.Ed. 1322 (1935). Although it is surely true that an innocent person may suffer great harm to his reputation and property by being erroneously accused of a crime, all citizens must submit to a criminal prosecution brought in good faith so that larger societal interests may be preserved. *See Douglas v. City of Jeannette*, 319 U.S. 157, 163, 63 S.Ct. 877, 880–81, 87 L.Ed. 1324 (1943); *Beal v. Missouri Pacific R.R. Corp.*, 312 U.S. 45, 49, 61 S.Ct. 418, 420–21, 85 L.Ed. 577 (1941). As Justice Frankfurter explained, "[b]earing the discomfiture and cost of a prosecution for crime even by an innocent person is one of the painful obligations of citizenship." *Cobbledick v. United States*, 309 U.S. 323, 325, 60 S.Ct. 540, 541, 84 L.Ed. 783 (1940).

Thus, in the past few decades, the Supreme Court has upheld federal injunctions to restrain state criminal proceedings only where the threatened prosecution chilled exercise of First Amendment rights, *see, e.g., Wooley v. Maynard*, 430 U.S. 705, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977) (threatened enforcement of unconstitutional statute requiring "Live Free or Die" motto on car license plate against those covering up motto); *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975) (ordinance banning topless dancing, enforcement of which threatens to bankrupt petitioner); *Dombrowski v. Pfister*, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965) (civil rights workers repeatedly prosecuted under state law broadly regulating speech).[6] *See also Steffel v. Thompson*, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974) (granting declaratory relief to handbill distributors repeatedly threatened with arrest). In all other cases that have arisen in that period, a person asserting a constitutional challenge to criminal process has been thought to have an adequate non-injunctive remedy; he may raise his constitutional claim as a defense in the state criminal proceedings, once initiated.

We have recently recognized that while the *Younger* line of cases constricts federal intervention in *state* prosecutions, it does not necessarily control a petition for a federal civil injunction to restrain an ongoing *federal* criminal proceeding. *See Juluke v. Hodel*, 811 F.2d 1553, 1556–57 (D.C.Cir. 1987). Nevertheless, in no case that we have been able to discover has a federal court enjoined a federal prosecutor's investigation or presentment of an indictment. Of course, a federal prosecutor typically brings cases only in federal court,[7] thereby affording defendants, after indictment, a federal forum in which to assert their defenses—including those based on the Constitution. Because these defendants are already guaranteed access to a federal court, it is not surprising that subjects of federal investigation have never gained in-

---

6. In *Dombrowski*, the plaintiffs had alleged that their prosecutions were brought in bad faith, *see* 380 U.S. at 482, 85 S.Ct. at 1118–19, yet the Court did not seem to rely on this allegation as the primary basis for ordering that an injunction be granted. *But see Younger v. Harris*, 401 U.S. 37, 47–49, 91 S.Ct. 746, 752–753, 27 L.Ed.2d 669 (1971) (discussing *Dombrowski* ).

7. In the District of Columbia, the United States Attorney may also prosecute criminal charges in

junctive relief against federal prosecutors.[8] Moreover, as the district court noted, Rule 12(b)(1) of the Federal Rules of Criminal Procedure permits any defendant to raise by motion, after indictment but before trial, a defense based on "defects in the institution of the prosecution."[9] Deaver's challenge is essentially that—a contention that there would be a constitutional defect in the institution of any prosecution growing out of the independent counsel's investigation. By implication, the existence of Rule 12(b)(1) suggests that appellant's constitutional challenge is not to be raised in a preindictment civil injunctive action. This implication is strengthened by the traditional reluctance, which we have discussed, of an equity court to interfere with criminal proceedings. And we think the limited appealability of district court orders denying pretrial motions in criminal cases makes the implication that Deaver cannot bring this Rule 12(b)(1)-type claim to our court inescapable. A district court's denial of a pretrial motion is ordinarily not considered a "final decision" appealable under 28 U.S.C. § 1291; the defendant must therefore stand trial, and only after conviction may he bring the issue to the Court of Appeals. *See United States v. Hollywood Motor Car Co., Inc.*, 458 U.S. 263, 264, 102 S.Ct. 3081, 3082, 73 L.Ed.2d 754 (1982); *United States v. Bird*, 709 F.2d 388, 390 (5th Cir.1983). The Supreme Court has departed from this application of the "final judgment rule" in criminal cases on only three occasions; in each case it found the district court's decision effectively final un-der the collateral order doctrine. *See Cohen v. Beneficial Ind. Loan Corp.*, 337 U.S. 541, 545–47, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528 (1949). The Court has permitted interlocutory appeal of the denial of motions to reduce excessive bail, *Stack v. Boyle*, 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 3 (1951), to dismiss an indictment on double jeopardy grounds, *Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977), and to dismiss a prosecution against a congressman prohibited by the Speech and Debate Clause of the Constitution, *Helstoski v. Meanor*, 442 U.S. 500, 99 S.Ct. 2445, 61 L.Ed.2d 30 (1979).[10] In each case, immediate appeal was necessary because the petitioner had alleged the violation of a specific right guaranteed by the Constitution "the legal and practical value of which would be destroyed if it were not vindicated before trial." *Hollywood Motor Car*, 458 U.S. at 266, 102 S.Ct. at 3083 (quoting *United States v. MacDonald*, 435 U.S. 850, 860, 98 S.Ct. 1547, 1552, 56 L.Ed.2d 18 (1978)).

Deaver argues that the independent counsel's investigation violates important rights and that this violation cannot adequately be remedied at a later date. He contends that he is being forced to defend himself against criminal charges brought by a mere private citizen—a vigilante. It is true that the burden of being haled into court by a pretender to the throne, so to speak, cannot be completely remedied once a trial begins, for the defendant would still have suffered the indignity. Yet, without

the District of Columbia court system. *See* D.C. Code Ann. § 23–101(c) (1981).

**8.** *Juluke* assumed (but did not actually hold) that federal courts may extend *Doran* and *Wooley* to justify enjoining future *federal* arrests and prosecutions that chill the exercise of First Amendment rights. *See* 811 F.2d at 1557. Deaver is neither asserting a violation of First Amendment rights nor complaining that Seymour's threatened indictment chills future behavior.

**9.** The Federal Rules of Criminal Procedure are a comprehensive set of rules of pleading, practice, and procedure for federal criminal prosecutions. The Supreme Court has been given authority by statute to prescribe such rules and present them to the Congress for examination. The proposed rules take effect 90 days later, unless Congress, by legislation, delays their implementation and/or amends them. Once put into effect, the Federal Rules have the force of law. *See* 18 U.S.C. § 3771 (1982). *See also* Hungate, *Changes in the Federal Rules of Criminal Procedure*, 61 A.B.A.J. 1203 (1975).

**10.** Applying the rationale of *Helstoski*, three circuit courts have permitted sitting federal officials who claim immunity from prosecution on separation of powers grounds to bring interlocutory appeals from the denial of their motions to dismiss. *See United States v. Myers*, 635 F.2d 932 (2d Cir.1980) (Member of Congress); *United States v. Hastings*, 681 F.2d 706 (11th Cir.1982) (federal judge); *United States v. Claiborne*, 727 F.2d 842 (9th Cir.1984) (federal judge).

deciding an issue not squarely before us, we doubt that Deaver's claim—were it unsuccessfully raised in a Rule 12(b)(1) motion after indictment—would be immediately appealable under the collateral order exception to the final judgment rule. Unlike the defendants in the cases described above, Deaver does not assert a constitutional right not to stand trial, but merely claims that Seymour is not qualified to direct the prosecution. Assuming *arguendo* Deaver's contention is correct, his rights can be vindicated by a reversal of any conviction. *See, e.g., Hollywood Motor Car,* 458 U.S. at 268, 102 S.Ct. at 3084 (defendant's prosecutorial vindictiveness claim can be remedied through post-conviction appeal); *United States v. MacDonald,* 435 U.S. 850, 860, 98 S.Ct. 1547, 1552–53, 56 L.Ed.2d 18 (1978) (objection to trial based on speedy trial grounds appealable only after conviction); *United States v. Taylor,* 798 F.2d 1337, 1340 (10th Cir.1986) (claims of prosecutorial misconduct, including improper use of state officers in grand jury investigation, appealable after conviction); *Bird,* 709 F.2d at 392 (claim that prosecution violated plea bargain agreement not to prosecute can be vindicated on post-conviction appeal). Thus, were Deaver to bring this same claim as a Rule 12(b)(1) motion, we think it likely the final judgment rule would bar any appeal of a denial of that motion until after conviction. Were we to allow Deaver to bring a civil challenge, with its attendant rights of appeal, before a prosecution even begins, we would thereby undermine the final judgment rule.

That Deaver's challenge is a serious one with far-ranging and troubling constitutional implications does not support his argument for accelerated and unorthodox judicial review. Indeed, it substantially weakens it. We have an obligation to avoid constitutional questions if at all possible. *See Ashwander v. Tennessee Valley Auth.,* 297 U.S. 288, 346–48, 56 S.Ct. 466, 482–84, 80 L.Ed. 688 (1936) (Brandeis, J., concurring). This principle is particularly strong when the constitutionality of a federal statute is challenged. *See Hastings v. Judicial Conference of the United States,* 770 F.2d 1093, 1100 (D.C.Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 3272, 91 L.Ed.2d 563 (1986). If appellant is acquitted of the charges brought against him, we of course would not be obliged to decide this constitutional issue.[11]

Congress has established a comprehensive set of rules governing federal criminal prosecutions—the Federal Rules of Criminal Procedure. These rules provide adequate, although limited, opportunities for defendants to challenge shortcomings in prosecutorial authority. The final judgment rule, moreover, generally prevents defendants from bringing appeals until after conviction. We cannot allow Deaver to avoid these rules—and thereby encourage a flood of disruptive civil litigation—by bringing his constitutional defense in an independent civil suit. Prospective defendants cannot, by bringing ancillary equitable proceedings, circumvent federal criminal procedure.

D.H. GINSBURG, Circuit Judge, concurring:

It is a "basic doctrine of equity jurisprudence that courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." *Younger v. Harris,* 401 U.S. 37, 43–44, 91 S.Ct. 746, 750, 27 L.Ed.2d 669 (1971), quoted approvingly in *Juluke v. Hodel,* 811 F.2d 1553, 1557 (D.C.Cir.1987).[1]

---

**11.** The district court's certification of the constitutional question as a controlling question of law under 28 U.S.C. § 1292(b) (1982) does not affect our disposition. To be sure, that issue may well be controlling in the criminal proceeding that would follow Deaver's indictment, but, of course, section 1292(b), by its terms, does not apply to criminal proceedings. And, as we have explained, the issue cannot be controlling in this suit since appellant may not raise the issue in the manner he did.

**1.** In *Juluke,* this court indicated that the federalism concerns underlying *Younger* in the context of a federal court asked to enjoin a state prosecution did not operate "in a situation involving civil and criminal proceedings in separate *federal* court actions." 811 F.2d at 1556 (emphasis in

The district court applied this rule in denying Michael Deaver's request for a preliminary injunction preventing independent counsel Whitney North Seymour, Jr. from seeking an indictment from the grand jury. On appeal we must decide whether the district court abused its discretion in so holding. *See Doran v. Salem Inn, Inc.,* 422 U.S. 922, 931–32, 95 S.Ct. 2561, 2567–68, 45 L.Ed.2d 648 (1975); *Juluke v. Hodel,* 811 F.2d at 1558.

As the court has explained, *see* at 66, 67–68, Deaver challenges the constitutionality of the independent counsel provisions of the Ethics in Government Act, 28 U.S.C. §§ 49, 591–98 (1982 & Supp. III 1985), and he claims that, if indicted, he would suffer the "continuing destruction of his business," "injury to his reputation and dignity," and "the expenditure of substantial resources in his defense." It is clear that this type of harm does not rise to the level of "irreparable injury":

> Certain types of injury, in particular, the cost, anxiety, and inconvenience of having to defend against a single criminal prosecution, could not by themselves be considered "irreparable" in the special legal sense of that term. Instead, the threat to the plaintiff's federally protected rights must be one that cannot be eliminated by his defense against a single criminal prosecution.

*Younger v. Harris,* 401 U.S. at 46, 91 S.Ct. at 751–52 (citation omitted). It is of no moment that Deaver bases his challenge upon the alleged unconstitutionality of the office of independent counsel; injunctive relief is not granted

> even if [the complained-of] statutes are unconstitutional. "No citizen or member of the community is immune from prosecution, in good faith, for his alleged criminal acts. The imminence of such a prosecution even though alleged to be unauthorized and hence unlawful is not alone ground for relief in equity which exerts its extraordinary powers only to prevent irreparable injury to the plaintiff who seeks its aid."

*Watson v. Buck,* 313 U.S. 387, 400, 61 S.Ct. 962, 966, 85 L.Ed. 1416 (1941), quoting *Beal v. Missouri Pacific Railroad Corp.,* 312 U.S. 45, 49, 61 S.Ct. 418, 420–21, 85 L.Ed. 577 (1941). *See Younger v. Harris,* 401 U.S. at 49, 91 S.Ct. at 753. The district court therefore did not abuse its discretion in denying injunctive relief here, because "the injury that [Deaver] faces is solely 'that incidental to every criminal proceeding brought lawfully and in good faith.'" [2]

original). At the same time, however, we reaffirmed the broad equitable principle announced in *Younger* and quoted in the text. Accordingly, after quoting this passage from *Younger,* the court in *Juluke* stated:

> To the extent that [this equitable doctrine] suggests that the District Court judge in the civil case had discretion to defer action in the proceeding before him pending resolution of the criminal case, the principle is unexceptional....
>
> The only conceivable reason not to consider the claim for injunctive relief in the civil case was that it would have been inefficient to do so, because the same issues—the validity and applicability of the regulations—would be decided in the criminal action. That, however, merely restates the traditional test for denying the consideration of equitable relief—that there is an adequate remedy available at law. We find this reason persuasive as to whether one court may enjoin an ongoing prosecution in another court.

*Id.* at 1557. The court then proceeded to determine whether the district court had abused its discretion in denying injunctive relief as against arrests for future conduct ("They never sought to enjoin the existing prosecutions." *Id.*), and relied upon the *Younger* line of cases for guidance as to when it is appropriate to grant equitable relief. I apply the *Younger* cases in order to determine whether injunctive relief against a single prosecution is appropriate, applying the same equitable principles as did the court in *Juluke.*

2. Deaver claims that indictment will result in the "continuing destruction of his business," but this harm does not compare to that relied upon in *Doran v. Salem Inn.* In that case, the Court, on a "close" call, upheld the grant of injunctive relief to bars which were threatened with prosecution for employing topless dancers. It was undisputed that "absent preliminary relief, they would suffer a substantial loss of business and perhaps even bankruptcy" if forced to comply with the law. 422 U.S. at 932, 95 S.Ct. at 2568. Here, unlike in *Doran,* business interests would suffer only indirectly from indictment, as a result of the harm to Deaver's reputation. Such harm is not only more conjectural than that in *Doran,* but is also intimately linked with the "discomfiture" of prosecution that must be borne "even by an innocent person." *Cobbled-*

*Younger v. Harris,* 401 U.S. at 49, 91 S.Ct. at 753, quoting *Douglas v. City of Jeannette,* 319 U.S. 157, 164, 63 S.Ct. 877, 881, 87 L.Ed. 1324 (1943).[3]  Because I read the court's decision to rest ultimately upon the same basis, *see* at 69, I concur.

**3.** Deaver contends that, due to the alleged constitutional infirmities in the office of independent counsel, any indictment here would not be "brought lawfully." A further reading of *Douglas* indicates that this phrase was meant to distinguish the situation in *Hague v. C.I.O.,* 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939), in which a union sought injunctive relief barring the New Jersey police from continuing their practice of repeatedly removing from Jersey City union members engaged in leafletting and "compell[ing] them to board ferry boats destined for New York." *Id.* at 501, 59 S.Ct. at 958. In light of these facts, the Court stated that the "exclusion, removal, personal restraint and interference, by force and violence, are accomplished without authority of law and without promptly bringing the persons taken into custody before a judicial officer for hearing." *Id.* at 505, 59 S.Ct. at 959. It was in this sense that the criminal proceedings in *Hague* were not "brought lawfully."

In Deaver's case, conversely, he has available to him the legal remedies provided in the criminal process—certainly post-indictment, as the court indicates, and perhaps even pre-indictment if the narrow circumstances contemplated in *United States v. Ryan,* 402 U.S. 530, 532, 91 S.Ct. 1580, 1581–82, 29 L.Ed.2d 85 (1971) arise ("If ... [a] subpoena is unduly burdensome or otherwise unlawful, [the petitioner] may refuse to comply and litigate those questions in the event that contempt or similar proceedings are brought against him."). In these circumstances, where the petitioner has not shown irreparable harm, a court of equity may not grant civil injunctive relief and thereby supplant the criminal process. *See Juluke v. Hodel,* 811 F.2d at 1557–58, and cases cited in n. 20.