## ROCKWELL INTERNATIONAL CORPORATION, Plaintiff,

v.

## UNITED STATES of America, et al., Defendants.

### Civ. A. No. 89-2607-LFO.

United States District Court, District of Columbia.

Oct. 6, 1989.

Richard J. Ney, William M. Bradner, Jr., Marcia E. Carpeni, Jerome C. Katz, Donald W. Rose and Robert A. Schwinger, Chadbourne & Parke, New York City (John D. Aldock, Shea & Gardner, Washington, D.C., of counsel), for plaintiff.

Richard B. Stewart, Asst. Atty. Gen., Land and Natural Resources Div., Margaret N. Strand, Letitia J. Grishaw, Ashley Doherty and Scott A. Schachter, Attys., Environmental Defense Section, and Joseph G. Block, Environmental Crimes Section, U.S. Dept. of Justice, Land and Natural Resources Div., Environmental Defense Section, Washington, D.C., for defendants.

MEMORANDUM

OBERDORFER, District Judge.

This matter is before the Court on the motion of Rockwell International Corporation for a preliminary injunction. Because Rockwell is unlikely to prevail on the merits of its underlying claims, an accompanying Order will deny the motion.

Pursuant to a contract with the United States Department of Energy, entered January 8, 1975 and periodically renewed, most recently on January 1, 1989, Rockwell manages, operates, and maintains the government-owned facility known as the Rocky Flats Plant near Golden, Colorado, where nuclear weapons' components are produced. Affidavit of George B. Merrick, Sept. 20, 1989 ("Merrick Aff.") at ¶¶ 2, 3. According to Rockwell, performance of the contract requires it to treat and dispose of certain types of waste materials in ways that the Environmental Protection Agency and the Department of Justice may determine, violate various United States laws and regulations. Memorandum of Points and Authorities in Support of Plaintiff Rockwell International Corporation's Application for a Preliminary Injunction ("Rockwell Memorandum") at 2-3. In particular, Rockwell targets three waste treatment and disposal procedures that it claims would place it in jeopardy of criminal prosecution if it were to continue operation of the plant: (1) the disposal of waste containing radioactive materials; (2) the treatment of residue in a plutonium recovery incinerator; and (3) the use of evaporator water, generated from hazardous waste elsewhere in the plant, in the plant's steam plant and cooling tower.

In June 1989, agents of the Federal Bureau of Investigation filed an affidavit alleging suspected criminal conduct by Rockwell in the disposal of waste materials from the Rocky Flats Plant. Merrick Aff. at ¶ 15; Rockwell Ex. C. On the basis of that affidavit, a United States Magistrate in Colorado issued a warrant pursuant to which agents searched the Rockwell facility. *Id.* Thereafter, the Department of Justice advised Rockwell that it and several of its employees are the target of a criminal investigation. Rockwell Memorandum at 10-11. The investigation is now at the Grand Jury stage, but no indictment has yet been returned. *Id.* In addition to the federal criminal proceedings, a civil administrative complaint has been issued by the EPA that does not propose any civil penalties at this time. Memorandum of Rockwell International Corporation in Opposition to The United States' Suggestion of Mootness or, in the Alternative, Motion for an Extension of Time to Respond to Rockwell's Motion for a Preliminary Injunction, at Exh. 1. Finally, Colorado authorities have notified Rockwell that they consider its storage and management of certain residues to be unlawful. Merrick Aff. at ¶ 31.

Rockwell alleges that, but for the threat of criminal prosecution, it stands ready to continue performing the 1975/1989 contract. Rockwell Memorandum at 4. Confronted with the prospect of criminal prosecution, however, it would abandon the contract, but for the fact that such an action might expose it to civil liabilities, including possible debarment from future government contract opportunities. Merrick Aff. at ¶ 5. Meanwhile, Energy and Rockwell have agreed that it would be in the best interest of both parties to release Rockwell from its contract as soon as a new contractor can be installed, estimated to be about January 1, 1990. Defendants' Memorandum in Response to Plaintiff's Application for Preliminary Injunction, Sept. 29, 1989 ("Defendants' Response") at 4. Rockwell seeks a preliminary injunction enjoining the government from demanding that Rockwell perform on the contract to the extent that performance might subject it to liability in any of the three areas targeted by Rockwell, and/or enjoining the government from prosecuting or imposing civil or criminal liability for any action hereafter taken with respect to the three areas targeted by Rockwell while it is being compelled to perform the contract.

Rockwell does appear to be exposed to a dilemma. There was a time when a federal court might serve as a "refuge" for citizens, corporate as well as individual, so exposed. *See, e.g., Chambers v. Florida,*

309 U.S. 227, 240–41, 60 S.Ct. 472, 478–79, 84 L.Ed. 716 (1940). But the concerns related by Rockwell here are presently beyond the power of a federal court to address. Our Court of Appeals has recently noted that it had found no case in which a federal court had enjoined a federal prosecutor's investigation or presentment of an indictment. *Deaver v. Seymour*, 822 F.2d 66, 69 (D.C.Cir.1987) (*see also id.* at 72, D.H. Ginsburg, J., concurring). The strictures against federal court interference with state criminal investigations and prosecutions are well-established. *See, e.g., Younger v. Harris*, 401 U.S. 37, 49, 91 S.Ct. 746, 753, 27 L.Ed.2d 669 (1971); *Bokulich v. Jury Comm'n of Greene County*, 394 U.S. 97, 98, 89 S.Ct. 767, 768, 22 L.Ed.2d 109 (1969); *Spielman Motor Sales Co. v. Dodge*, 295 U.S. 89, 55 S.Ct. 678, 79 L.Ed. 1322 (1935). In this case, as in *Deaver*, the defendant or potential defendant would have an opportunity, after an indictment is returned, to move to dismiss it and to defend against it at trial. Any defense based on the theory that the contract, not Rockwell's own free will, caused the allegedly criminal conduct, can only be pursued in court when, and if, an indictment is returned. *See Deaver*, 822 F.2d at 71 ("Prospective defendants cannot, by bringing ancillary equitable proceedings, circumvent federal criminal procedure.")

Nor does this Court have authority at this time to suspend Rockwell's contract duties. Rockwell invokes the Administrative Procedures Act, 5 U.S.C. § 702 (1982), and the Due Process Clause of the Fifth Amendment to the United States Constitution as the sources of judicial authority to intervene and suspend, or authorize suspension of, performance under the contract. However, neither of these provides authority for the judicial action sought by plaintiff in this case.

With respect to the claim that relies on APA Rockwell has failed to establish the existence of any final agency action that would entitle it to review. Plaintiff relies heavily on *Abbott Laboratories v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). There, a regulation adopted after notice and comment that required all pharmaceutical manufacturers to "designate the established name of the particular drug every time its trade name is used anywhere in such material" was deemed to be a final agency action that was the appropriate subject of a pre-enforcement declaratory judgment. *Id.* at 139, 87 S.Ct. at 1510. The situation at hand, however, bears far more resemblance to *Ewing v. Mytinger & Casselberry, Inc.*, 339 U.S. 594, 70 S.Ct. 870, 94 L.Ed. 1088 (1950), which the *Abbott* court carefully distinguished. In *Ewing*, the court denied an injunction barring further prosecution of a Food and Drug Administration finding of probable cause to believe that plaintiff had misbranded a dangerous product. The *Abbott* court approved the *Ewing* decision on the ground that such an "unheard form of relief . . . , if allowed, would have permitted interference in the early stages of an administrative determination. . . ." *Abbott*, 387 U.S. at 148, 87 S.Ct. at 1515. As it is likely to be decided that the grand jury proceeding and related administrative deliberations with respect to Rockwell, unlike the final order in *Abbott*, are still in flux, they, too, must be deemed inappropriate subjects for judicial intervention at this time in this Court. *See also FTC v. Standard Oil Co.*, 449 U.S. 232, 101 S.Ct. 488, 66 L.Ed.2d 416 (1980).

In addition, Rockwell has failed to initiate, much less exhaust the mechanism described in the disputes clause of the contract, Rockwell Exh. A at ¶ 27, and the Contract Disputes Act, 41 U.S.C. §§ 601–613. Both of these provisions afford a forum for the resolution of disputes, such as Rockwell's claim that the threat of criminal prosecution renders legally impossible and unconscionable the continued operation of the plant pursuant to the contract. Action taken in a disputes review process could be reviewed in the Claims Court, now endowed with equitable powers. 41 U.S.C. § 609; 28 U.S.C. §§ 1346, 1491.

Rockwell claims that proceedings under these provisions would serve no purpose because any remedy ultimately granted would be awarded too late to remove the threat of criminal prosecution for acts com-

mitted pursuant to contract. However, Rockwell has made no adequate showing that if these time concerns had been, or were now, brought to the attention of those administering the disputes process, they would not find a way effectively to expedite Rockwell's claims. Neither has Rockwell demonstrated that if such requests were unreasonably denied or delayed, the Claims Court could not or would not provide relief.

Plaintiff relies heavily upon the decision of Judge Oliver Gasch in *Paradyne Corp. v. Department of Justice,* 647 F.Supp. 1228 (D.D.C.1986). Because *Paradyne* has been dismissed as moot and is difficult to reconcile with *Deaver,* it cannot serve as binding precedent. Even if it could, however, it does not now appear that Rockwell will be able to show that the government demands performance that would subject Rockwell to the same risk of prosecution faced by the plaintiff in *Paradyne.* Energy's recent announcement that it intends to replace Rockwell at Rocky Flats by the end of 1989 evidences the probability that the government will relieve Rockwell from its current contract obligations soon. *See* Declaration of Berton J. Roth, Sept. 29, 1989 (attached as Exh. 1 to Defendants' Response). Rockwell has not shown that since this announcement it has endeavored administratively to seek relief from its obligations to operate the plant and instead simply to maintain the security of the place pending the installation of its successor contractor. Such action could remove Rockwell from its contract obligations without judicial intervention.

More specifically, Rockwell fails to demonstrate that only an injunction could relieve it from the burden of either criminal or civil liability in any of the three areas that it states that it could be subjected to prosecution. With respect to the threat of prosecution for its disposal of low level radioactive waste, affidavits submitted by plaintiff demonstrate that Energy's acting area manager had earlier stated that if disputes with EPA were not resolved, he might suspend operations of the plant "which would generate additional quantities of wastes which may be subject to current land ban restrictions." Rockwell's Memorandum at 8 (citing Merrick Aff. at ¶ 16). There is no indication, however, that plaintiff has recently requested the acting area manager to take this action.

In addition, Rockwell claims to be in jeopardy because of the operation of a plutonium recovery incinerator without a permit. However, it also reports that operation of the incinerator is currently halted and Energy has agreed in a judicial stipulation not to restart the incinerator until such time as a permit is issued. Rockwell's Memorandum at 12 (citing Merrick Aff. at ¶¶ 29–30). Obviously, whatever jeopardy may confront Rockwell on account of prospective incinerator operation cannot be relieved by an injunction authorizing suspension of an incinerator operation that is already suspended.

Finally, with respect to evaporator water generated at the plant, Rockwell reports that the Colorado Waste Management Authority has recognized that the water in question is eligible for a "commercial product exclusion" pursuant to federal law which is administered by both Colorado and the federal authorities. Yet Rockwell has failed to show that it has exhausted (or even recently pursued) efforts to obtain a parallel federal exclusion. Rockwell Memorandum at 16 (citing Merrick Aff. at ¶¶ 48, 50 and 51). In view of the alternative ways that Rockwell could ease its dilemma, it is unlikely that Rockwell would prevail on its contention that it is entitled to an injunction because of government refusal to relieve it of its contract obligations.

The foregoing considerations, among others, also make it unlikely that plaintiff would prevail on its due process claims. Even if the government's actions affected or threatened the liberty or property of Rockwell, it has failed to show that established process would not enable the adjudication of those rights and amelioration of any government threat to them. Rockwell is unlikely to be able to show that it cannot defend against any indictment in a criminal proceeding, that any civil judgment obtained on behalf of EPA would not be reviewable in a federal Court of Appeals,

*see* 42 U.S.C. § 6976(a), or that any contract dispute arising from Rockwell's effort to terminate its contract before the pending termination occurs could not be adjudicated using the disputes mechanism that culminates in the Claims Court.

Accordingly, an accompanying Order will deny the motion for preliminary injunction and schedule a status call for further administration of this case.

## ORDER

For the reasons stated in an accompanying Memorandum, it is this 6th day of October, 1989, hereby

ORDERED: that plaintiff's motion for a preliminary injunction should be, and is hereby, DENIED.